IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Terrance Lowdermilk, #40065-074 | ) | |
| | ) | Civil Action No. 8:07-2944-GRA-BHH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| John J. LaManna, Warden of | ) | |
| FCI-Edgefield; Wanda Harrison, | ) | |
| Case Mgr. Coordinator; Gary | ) | |
| Koger, Case Mgr.; Bureau of | ) | |
| Prisons; Frank Spoon, Factory | ) | |
| Mgr.; R. Glasgow, Counselor; | ) | |
| Mr. Harrison, Asst. Warden; | ) | |
| NFN Fennell, Officer, | ) | |
| Practitioner; and Officer | ) | |
| Joe Werts, Supervisor, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, a federal prisoner proceeding *pro se*, alleges his constitutional rights

have been violated pursuant to *Bivens*.[1]  This matter is before the Court on the defendants'

motion to dismiss.  (Dkt. Entry # 45.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial

matters in cases filed under Title 42, United States Code, Section 1983, and submit findings

and recommendations to the District Court.

---

[1]*Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

The plaintiff brought this action on August 21, 2007, seeking damages for alleged civil rights violations.  On September 30, 2008, the defendants filed a motion to dismiss, or, alternatively, for summary judgment.  By order filed October 1, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  By order filed January 26, 2009, the parties were advised that the defendants' pending motion would be treated as a motion to dismiss.  On February 20, 2009, the plaintiff filed a response opposing the defendants' motion to dismiss.  On April 3, 2009, the defendants filed a reply to the plaintiff's response.  Then on July 22, 2009, the plaintiff filed a sur-reply.

## I.  FACTS PRESENTED

The plaintiff is a federal inmate currently incarcerated at the Federal Correctional Institution ("FCI") in Bennettsville.  (Dkt. # 48 -Notification of Change of Address.)  When the plaintiff filed this action he was housed at the FCI in Edgefield.  The plaintiff filed his original complaint on August 28, 2007, and subsequently filed his first amended complaint on August 30, 2007, and his second amended complaint on January 9., 2008.  (Dkt. # 1, 5, and 24.)

## A.  Original Complaint

In his original complaint, the plaintiff alleged the defendants the Warden LaManna, Wanda Harrison, Gary Koger, J. Neal, K. Joy, E.K. Carlton, and the Bureau of Prisons ("BOP") had violated his civil rights.  The plaintiff alleged claims for retaliation, failure to

follow BOP policy, breach of contract, discrimination, and due process violations. (Dkt. # 1 -Attach. # 1 - Mem. Supp. Org. Compl. at 2.)

Specifically, the plaintiff alleged the defendants erroneously classified security or custody classification score which hindered him from participating in programs at lower level facilities. (*Id.* at 4.) He contends that the defendants Koger and Wanda Harrison failed to follow the rules, policies, regulations, and clearly established law in their determination of the policies. He states that pursuant to § 3621(b), the BOP cannot selectively apply statutory factors. (*Id.*) He seeks to be designated to a lower level institution or minimum security level institution. (*Id.*)

Next, the plaintiff alleges that his classification score erroneously reflects six points in the "History of Violence" section. He alleges that score should be lower because a prior assault conviction was being appealed and he had received a suspended sentence for that conviction and was never incarcerated. (*Id.* at 5-6.) Additionally, for the same reasons, he alleges that the six point "Criminal History Score" he was assigned was also erroneous in that it includes this same conviction. (Dkt. #1 -Attach. # 1 - Mem. Supp. Org. Compl. at 6-7.) Finally, the plaintiff alleges his classification score was erroneous because he received scores of one point, or average, for the categories of living skills and the level of activity in programs, such as treatment or drug education programs. The plaintiff alleges that he is a "model inmate" and has actively participated in multiple programs and thus should have earned two points in each of the categories of living skills and level of participation in programs. (*Id.* at 8-9.)

The plaintiff also alleges that in April 2007, his case manager, the defendant Koger, made an oral and written agreement to refer the plaintiff for a transfer and that Koger breached this agreement in "violation of PS 3420.09, Standard of Employee Conduct." (*Id.* at 9.)

Finally, in his original complaint, the plaintiff alleges that the defendants Koger and Wanda Harrison retaliated against the plaintiff. He states that Koger has threatened to place the plaintiff in lock-up and have the plaintiff beaten. He states Koger always uses "profane, obscene, or otherwise abusive language when communicating with the [plaintiff] and other inmates." He states that Wanda Harrison has conspired with Koger to violate his due process rights to a fair program review and that she gives preferential treatment to "one inmate, or a group of inmates, over another." He also alleges that Wanda Harrison has on several occasions intentionally touched his genitalia, groin, and buttocks which he alleges is in retaliation for the plaintiff's filing complaints against Wanda Harrison and her husband, the defendant Steve Harrison. He alleges there is also a conflict of interest and an abuse of authority. (*Id.* at 10.)

The plaintiff seeks a mandamus compelling the defendants to correct custody classification, and damages for mental and emotional injuries along with punitive damages and a lien on the assets of the defendants. (*Id.* at 11.)

## B. First Amended Complaint

In his first amended complaint filed August 30, 2007, the plaintiff added the defendants Spoon, Glasgow, Harrison, and Fennel alleging claims of harassment,

4

retaliation, denial of access to the courts, and discrimination. (Dkt. # 5 - 1st Am. Compl. at 2.)

The plaintiff alleges Glasgow violated the plaintiff's constitutional rights by confiscating, unlawfully seizing, and destroying court documents and by refusing to allow the plaintiff to call his attorney before the deadline of a brief or make legal copies when the inmates' copy machine is out of order or when the law library is closed. (*Id.* at 2; 6; 7.)

The plaintiff also alleges the defendants Fennel and Glasgow have harassed and retaliated against him. (*Id.* at 5.) He alleges that Fennel wrote him up for returning late to work after the plaintiff was summonsed to Glasgow's office to retrieve and sign for legal mail. (*Id.*) He alleges that on May 25, 2007, Fennel retaliated against him by reassigning the plaintiff to a job where he could not advance in pay grade. (*Id.*)

The plaintiff alleges the defendants Spoon, Fennel, Steve Harrison, and Fennel discriminated and retaliated against him by giving preferential treatment to other inmates in the form of promotions and pay grade increases. (Dkt. # 5 - 1st Am. Compl. at 4; 7) He also alleges these defendants have violated the "Equal Pay Act and Fair Treatment of Inmates" and BOP policy 8120.02(3)(h) which states that federal prisons will not discriminate and sets forth the minimum time an inmate should be in a pay grade ninety days before a promotion. (*Id.* at 4; 8.) The plaintiff alleges discrimination because other white inmates have received pay grade increases while he has been in the same pay grade for twenty-three months. He states that he should have been given pay grade increases at ninety-day intervals. (*Id.* at 8.)

### C. Second Amended Complaint

In his second amendment filed January 29, 2008, the plaintiff added the defendant Joe Werts and alleges claims of conspiracy and retaliation against him. (Dkt. # 24 - 2nd Am. Compl.) Specifically, he alleges that on November 30, 2007, Werts conspired with the other defendants to retaliate against the plaintiff for filing this action. (*Id.* at 2.) He states that he was returning to work after attending a religious service at 2:00 p.m. and he stopped by the education department to pick up some legal materials. He states as he was leaving, the defendant Fennel stopped him and prevented him from returning to work. (*Id.*) He states that he returned to work at 3:00 p.m. and he spoke with the defendant Spoon about the incident so that he could receive an excuse for his absence from work. He states that at 6:55 p.m., he was given an incident report from his supervisor, Werts, which charged him with an unexcused absence from work at 2:00 p.m. (*Id.*)

He also alleges that on January 9, 2008, he was approached by Werts and threatened. Specifically, he alleges Werts told him that he knew about the plaintiff's lawsuit and that Werts was trying to get the plaintiff fired because he was not going to allow the plaintiff "to be suing UNICOR and working here." (Dkt. # 24 - 2nd Am. Compl. at 3.)

### II. <u>APPLICABLE LAW</u>

In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993). A pro se complaint must be read liberally, and such persons are not held to the strict

pleading requirements otherwise required of attorneys.  *Estelle v. Gamble*, 429 U.S. 97,

106-07 (1976). When, however, it appears to the Court that the plaintiff has totally failed to

state a claim which would entitle him to relief, a defendant is entitled to have his motion to

dismiss granted.  Fed.R.Civ.P. 12(b)(6).

## III.  DISCUSSION[2]

The defendants have filed a motion to dismiss in which they assert that the plaintiff's

complaint should be dismissed because the plaintiff has failed to state any valid *Bivens*

claim and has failed to exhaust his administrative remedies as to all his claims and further

they contend they are entitled to qualified immunity.  (Defs.' Mem. Supp. Mot. to Dismiss.)

In his reply memorandum the plaintiff attempts to state new claims which were not

included in his original or two amended complaints.  In considering this motion to dismiss,

the undersigned will address only those claims properly set forth in the complaints.[3]

---

[2]The undersigned notes that numerous times in his sur-reply, the plaintiff states that discovery is necessary.  However, a motion to dismiss under Rule 12(b)(6) presents only a question of law.  Either the plaintiff's allegations state a claim, or they do not.  No discovery is needed to support or oppose the defendants' motion to dismiss. *See Chicago Bd. Options Exchange v. Connecticut Gen. Life Insurance Co.,* 95 F.R.D. 524 (N.D.Ill.1982).

[3]The undersigned notes that generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate of liberal construction for pro se litigants makes it appropriate to consider the plaintiff's additional materials, such as his opposition memorandum. *See Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir.1987) (in reviewing district court's dismissal of pro se plaintiffs § 1983 claim, Second Circuit considered plaintiff's affidavit submitted in opposition to defendant's motion to dismiss).  The undersigned notes that this is not the same as allowing a plaintiff to amend his complaint through argument in his memorandum.  *Donahue v. United States Dep't of Justice,* 751 F.Supp. 45, 49 (S.D.N.Y.1990) ("The policy reasons favoring liberal construction of pro se pleadings warrant the Court's consideration of the allegations contained in plaintiffs' memorandum of law, at least where those allegations are consistent with the allegations in the complaint . . .").  Thus, the undersigned has considered the plaintiff's memoranda, but only to the extent that the plaintiff has discussed allegations

Further, as it is recommended that the defendants' motion to dismiss be granted for failure to state a claim, it is also recommended that defendants E.K. Carlton, Joy, and Neal be dismissed from this action without being served.[4]

As for the plaintiff's request for mandamus relief (Dkt. # 1 -Attach. # 1 - Mem. Supp. Org. Compl. at 11), this relief is moot as the plaintiff states in his sur-reply memorandum that he is now in minimum custody and his custody classification has been corrected. (Dkt. # 80 Attach. #6 - Pl.'s Aff. ¶¶ 37-39.)

As another initial matter, the undersigned notes that the BOP is not a proper defendant in a *Bivens* action. *Howard v. Federal Bureau of Prisons,* 198 F.3d 236 (4th Cir.1999)  Specifically, a suit against government agents acting in their official capacities is considered a suit against the United States, itself, and a remedy under Bivens is thus not available. *See Kentucky v. Graham,* 473 U.S. 159, 165 (1985) (internal quotations omitted) (holding "[o]fficial-capacity suits . . . generally present only another way of pleading an action against an entity of which an officer is an agent.").  Accordingly, the BOP should be dismissed as a defendant.

_____

consistent with those in the complaint.

[4]It appears that the plaintiff did submit a summons for Carlton, but the plaintiff did not include Carlton as a defendant in his complaint or its caption.  He did, however, list Carlton as a defendant in his memorandum supporting his complaint.  (Dkt. # 1 -Attach. # 1 - Mem. Supp. Org. Compl. at 1.)  Likewise, it appears the defendants Joy and Neal were named in the memorandum's caption, but were not served despite the plaintiff having filed a summons for each of them.  However, there are no factual allegations regarding these three defendants in the original complaint (or the memorandum supporting it) or the amended complaints.  Therefore, these defendants should not be served at this point, and furthermore service is also not recommended based upon the conclusion in this report that the defendants' motion to dismiss be granted.

Turning to the plaintiff's allegations, he has alleged civil rights violations pursuant to *Bivens.* In order to state a claim under *Bivens,* a claimant must show (1) a deprivation of a civil right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155-56 (1978). Furthermore, to hold a supervisory official liable under *Bivens*, a plaintiff must make a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs. *Fisher v. Washington Metro. Area Transit Author.,* 690 F.2d 1133, 1142-43 (4th Cir.1982).

### A. Claims regarding the Plaintiff's Custody Classification

In his complaint, the plaintiff alleges the defendants have violated his civil rights because his custody classification has been incorrect for years. A federal prisoner may bring an action challenging the conditions of his confinement pursuant to *Bivens.* However, to do so the prisoner must allege and show the deprivation of a constitutional right. Generally, the courts do not become involved in review of discretionary decisions of prison administrators because such decisions do not involve due process. *Meacham v. Fano*, 427 U.S. 215, 224-25 (1976). Therefore, custody classification decisions are not reviewable in federal court unless the prisoner can establish that he has a liberty interest created by statute or regulation.

In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action.

9

*Beverati v. Smith,* 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." *Gaston v. Taylor,* 946 F.2d 340, 343 (4th Cir. 1991).

Prison officials have broad discretion to classify inmates and assign them to appropriate prison housing. See 18 U.S.C. § 3621(b).[5] "Put simply, petitioner has not

[5]18 U.S.C. § 3621(b) provides:

The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
1) the resources of the facility contemplated;

2) the nature and circumstances of the offense;

3) the history and characteristics of the prisoner;

4) any statement by the court that imposed the sentence-

    A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

stated a due process claim because he has no protected liberty interest in a particular classification within BOP . . . ." *Posey v. Dewalt,* 86 F.Supp.2d 565, 571 (E.D.Va.1999). *See also Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir.1995)(holding "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."); *Hewitt v. Helms,* 459 U.S. 460, 468 (1983); *Meachum v. Fano,* 427 U.S. 215, 224 (1976). Neither the statute nor the BOP's regulations create a liberty interest for the plaintiff in any particular classification. *Robinson v. LaManna,* 2008 WL 4960236 (D.S.C. 2008.) Therefore, the plaintiff has failed to state a claim of constitutional magnitude as to his due process claim regarding his security or custody classification.

---

B) recommending a type of penal or correctional facility as appropriate; and

5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

**B. Claims regarding the Plaintiff's Job and Pay Grade Increases**

The plaintiff alleges that his constitutional rights were violated by the defendants in regards to his work assignment. Specifically, he alleges the defendants have discriminated against him and retaliated against him for his filing grievances.

First, the undersigned notes that to the extent that the plaintiff alleges a liberty interest regarding his job placement in the UNICOR[6] Program, the plaintiff has failed to state a claim.[7] It is well established that an inmate has no federal right to a job assignment. *Woodworth v. United States,* 44 Fed Appx. 112 (9th Cir. 2002)(finding that an inmate "has neither a liberty nor a property interest in his prison job"); *Grayson v. Federal Prison Industries Factory,* 69 F.3d 536 (5th Cir. 1995)(stating that prisoners have no constitutionally protected liberty or property interest in their prison job assignment, nor a legitimate claim of entitlement to continuing UNICOR employment); *James v. Quinlan,* 866 F.2d 627, 629-31 (3rd Cir. 1989)(holding that "plaintiffs do not have a liberty interest in their Federal Prison Industries job assignment"); *Johnson v. Knable*, 862 F.2d 314 (4th Cir. 1988)(stating that "prison work assignments are matter within the discretion of prison

---

[6] "UNICOR" is the trade name for the Federal Prison Industries, Inc ., a government corporation within the BOP, the purpose of which is to provide work simulation programs and training opportunities for inmates. *See* 28 C.F.R. § 345.11.

[7]To the extent the plaintiff is complaining that the defendants failed to comply with BOP policy, such a claim also fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation. *See United States v. Caceres,* 440 U.S. 741 (1978); *Keeler v. Pea,* 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

official, and denial of employment does not, in and of itself, abridge any constitutional right of the inmate"); *Altizer v. Paderick,* 569 F.2d 812 (4th Cir.1978)(holding custody classifications and work assignments are generally within the discretion of the prison administrator); *Jackson v. LaManna,* 2007 WL 1862371 (D.S.C. 2007)(stating that "[a]ll inmate job assignments are subject to the institution's needs, and inmates do not have any fundamental constitutional right to any specific work assignment"); and *Williams v. Farrior,* 334 F.Supp.2d 898 (E.D.Va. 2004)(finding that prisoner was not entitled to due process protection because he had no liberty or property interest in any prison job assignment or placement in any particular prison facility).[8]  Accordingly, the plaintiff's claims that the defendants violated his constitutional rights in regard to his UNICOR job are without merit.

In his complaints, the plaintiff alleges the defendants discriminated against him by giving preferential treatment to other inmates in the form of promotions and pay grade increases and retaliated in various ways against the plaintiff for the plaintiff's filing of grievances.  These claims are discussed separately below.

### i. Discrimination

As noted above, the plaintiff alleges the defendants Spoon, Fennel, Steve Harrison, and Fennel discriminated and retaliated against him by giving preferential treatment to other inmates in the form of promotions and pay grade increases.  (Dkt. # 5 - 1st Am. Compl. at

---

[8]In fact, the plaintiff appears to agree as he states in his sur-reply memorandum that "he does not have a constitutional right or liberty interest in prison compensation or to be paid for work in prison, only that staff not to discriminate, retaliate or to treat black inmates different from white inmates and to have Equal Protection."  (Dkt. # 80 - Pl.'s Mem. At 10.)

4; 7.)  He alleges discrimination because he states  white inmates have received pay grade increases while he has been in the same pay grade for twenty-three months.  He states that he should have been given pay grade increases at ninety-day intervals.  (*Id.* at 8.)

While an inmate has no federal right to a job assignment, there is a limited exception to that general rule which prohibits a prison official from basing an inmate's job assignment on certain unlawful criteria, such as the inmate's race, religion, or age. *Bentley v. Beck*, 625 F.2d 70, 71 (5th Cir. 1980) (prisoner's constitutional rights violated where prisoner was denied a job assignment in the prison kitchen because of race).  "Racial discrimination in prisoner job assignments states a violation of the equal protection clause of the Fourteenth Amendment and of the due process clause of the Fifth Amendment."  *Hollingsworth v. Wagoner,* 1990 WL 187125, *1 (4th Cir. 1990) (unpublished) (*citing Davis v. Passman*, 442 U.S. 228 (1979)).  To state a claim for an equal protection violation in a prison setting, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001); *see also, Johnson v. California*, 543 U.S. 499 (2005) (holding that to state a cognizable equal protection claim, a plaintiff must allege that defendants acted with intentional discrimination against a class of inmates which included plaintiff.).  To meet this requirement, plaintiff is required to set forth "specific, non-conclusory factual allegations that establish improper motive." *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir.2003).

Reviewing the allegations in the complaints, other than conclusory allegations, there is no evidence of discrimination on the behalf of the defendants regarding the plaintiff's work assignment. *Papasan v. Allain,* 478 U.S. 265, 286 (1986)("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."). The plaintiff does not allege discriminatory purpose or that he is even a member of an identifiable group. The plaintiff makes the bare assertion of an equal protection claim but he does not allege sufficient facts in support of it. Further, the plaintiff has not alleged sufficient information to determine whether the other inmates were similarly situated with the plaintiff and have been treated differently. Although required to liberally construe a pro se complaint, this Court is not required to develop tangential claims from scant assertions in the complaint. *See Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir. 1985). Accordingly, the plaintiff's claims of discrimination in regard to his prison job should be dismissed.

### ii. Retaliation

In his original complaint, the plaintiff alleges that the defendants Koger and Wanda Harrison retaliated against him for filing grievances against the defendants. He states that Koger has threatened to place the plaintiff in lock-up and have the plaintiff beaten. He states Koger always uses "profane, obscene, or otherwise abusive language when communicating with the [plaintiff] and other inmates." He also states that Wanda Harrison has on several occasions intentionally touched his genitalia, groin, and buttocks which he

alleges is in retaliation for the plaintiff's filing complaints against Wanda Harrison and her husband, the defendant Steve Harrison. . (Dkt. # 5 - 1st Am. Compl. at 10.)

The plaintiff alleges the defendants Fennel and Glasgow have harassed and retaliated against him. (Dkt. # 5 - 1st Am. Compl. at 5.) He alleges that Fennel wrote him up for returning late to work after the plaintiff was summonsed to Glasgow's office to retrieve and sign for legal mail, a response from the Regional Director's Office. (*Id.*) He alleges that on May 25, 2007, Fennel retaliated against him by reassigning the plaintiff to a job where he could not advance in pay grade. (*Id.*) The plaintiff also alleges the defendants Spoon, Fennel, and Steve Harrison discriminated and retaliated against him by giving preferential treatment to other inmates in the form of promotions and pay grade increases. (Dkt. # 5 - 1st Am. Compl. at 4; 7.)

Finally, in his second amended complaint, the plaintiff alleges that on November 30, 2007, the defendant Werts conspired with the other defendants to retaliate against the plaintiff for filing this action. (Dkt. # 24 - 2nd Am. Compl. at 2.) He states that he was returning to work after attending a religious service at 2:00 p.m. and he stopped by the education department to pick up some legal materials. He states as he was leaving, the defendant Fennel stopped him and prevented him from returning to work. (*Id.*) He states he returned to work at 3:00 p.m. and he spoke with the defendant Spoon about the incident so that he could receive an excuse for his absence from work. He states that at 6:55 p.m., he was given an incident report from his supervisor, Werts, which charged him with an unexcused absence from work at 2:00 p.m. (*Id.*) Then, he states that on January 9, 2008,

16

he was approached by Werts and threatened. Specifically, he alleges Werts told him that he knew about the plaintiff's lawsuit and that Werts was trying to get the plaintiff fired because he was not going to allow the plaintiff "to be suing UNICOR and working here." (Dkt. # 24 - 2nd Am. Compl. at 3.)[9]

"Prisoners do . . . have a constitutionally protected right of access to the courts and to file grievances which includes the right not to be harassed or retaliated against for their exercise." *Green v. Sacchet,* 2002 WL 32639150, at *5 (D.Md. 2002) (*citing ACLU of Maryland v. Wicomico Co.*, 999 F.2d 780, 785 (4th Cir. 1993); *see also Charles v. Reichel*, 67 Fed. Appx. 950, 953 (7th Cir.2003) ("[P]risoners have a constitutional right of access to the courts, which includes the right to file prison grievances in order to exhaust administrative remedies.") However, an inmate's claims of retaliation is generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris,* 73 F.3d 1310, 1317 (4th Cir.1996); *Adams v. Rice,* 40 F.3d 72, 74 (4th Cir.1994).

---

[9]To the extent that the plaintiff is alleging his due process rights were violated during his disciplinary hearing, the undersigned notes that the plaintiff did not adequately raise this claim in his complaints. (*See generally* 2nd Am. Compl.) In his second amended complaint, in regard to his disciplinary, he merely alleged a retaliation claim. (*Id.*) In any event, any such claim should be dismissed. An inmate's rights at prison disciplinary hearings are defined by the Due Process Clause of the Fourteenth Amendment. *Wolff v. McDonnell,* 418 U.S. 539, 568-69 (1974). The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Board of Regents v. Roth,* 408 U.S. 564, 570 (1972). The first step in analyzing a procedural due process claim is identifying whether the alleged deprivation impacts such a protected interest. *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir.1997). Here, the disciplinary proceeding did not impact any of the plaintiff's protected interests and thus fails.

To succeed on a retaliation claim, the plaintiff must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams*, 40 F.3d at 75. The plaintiff must also demonstrate that he suffered some adverse impact or actual injury, more than mere inconvenience, to the exercise of his constitutional right. *ACLU of Md., Inc. v. Wicomico County, Md.,* 999 F.2d 780, 785 (4th Cir. 1993). The plaintiff must plead specific evidence "establish[ing] that but for the retaliatory motive[,] the complained of incident . . . would not have occurred." *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995). "Temporal proximity" between an inmate's protected activity and the allegedly retaliatory, official action "is simply too slender a reed on which to rest" a *Bivens* retaliation claim. *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993). Complaints that offer nothing more than conclusory allegations of retaliation may be summarily dismissed. *Adams,* 40 F.3d at 74. Additionally, "a plaintiff alleging that government officials retaliated against [him] in violation of [his] constitutional rights must demonstrate, inter alia, that [he] suffered some adversity in response to [his] exercise of protected rights." *American Civil Liberties Union of Maryland, Inc. v. Wicomico County*, Md., 999 F.2d 780, 785 (4th Cir.1993).

Here, the plaintiff merely makes conclusory and self-serving allegations of retaliation. Several of the actions which the plaintiff alleges are merely conclusory allegations which would not support a claim of retaliation. For example, he alleges he was subjected to unwanted touching which he states in a conclusory fashion was in retaliation for his

complaints. He does not allege any facts sufficient to demonstrate that the alleged touching was taken in response to the exercise of a constitutionally protected right.

Further, the plaintiff does not dispute that he was late for work for which he was written up. The plaintiff also states that he was preparing paperwork for a lawsuit while he was working which prompted the defendant Fennel to state he would not allow such behavior. In his sur-reply memorandum, the plaintiff states that the defendants's argument that his custody status did not change before or after the plaintiff filed his grievances is false. He then alleges that his custody status has changed and has been corrected and his custody status has gone from medium high to a low level. (Dkt. #80 - Pl.'s Mem. at 3.) Clearly, if the plaintiff's custody level has changed for the better, the plaintiff has not experienced an *adverse* impact or injury in response to his filing of grievances.

Additionally, in his sur-reply memorandum, the plaintiff states that his request for a transfer to another institution, which was initially denied, was granted after he filed grievances. (Dkt. # 80 - Pl.'s Sur-reply Mem. at 13.) Again, the plaintiff has not shown he suffered an adverse impact or injury. He received the action he had requested.

Also, the plaintiff in his sur-reply memorandum also states that he has alleged an adverse action for filing grievances based upon the defendants' failure to correct the plaintiff's custody classification which was the subject of those grievances. (Dkt. # 80 - Pl.'s Sur-reply Mem. at 36.) The defendants' failure to change the plaintiff's custody classification cannot be an adverse reaction for his filing grievances complaining about his custody classification.

Further, in this case, the plaintiff has failed to allege that the defendants' actions had any adverse effects on his right to access the courts. There is no indication that the plaintiff actually withdrew any pending lawsuit, or that any lawsuit was dismissed as a result of the defendants' actions. Without the allegation of sufficient facts to demonstrate that his constitutional rights were chilled, the court concludes that the plaintiff's retaliation claim must be dismissed. Accordingly, the plaintiff has failed to state a claim of retaliation and these claims should be dismissed.

### iii. Conspiracy Claims

The plaintiff alleges the defendants have at various times conspired to violate his civil rights. To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. *Hinkle v. City of Clarksburg,* 81 F.3d 416, 421 (4th Cir.1996). Thus, an essential element for a claim of conspiracy to deprive a plaintiff of a constitutional right is an agreement to do so among the alleged co-conspirators. *Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1006-07 (4th Cir.1987). Without a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy. *Murdaugh Volkswagon v. First Nat'l Bank,* 639 F.2d 1073, 1075-76 (4th Cir.1981). The plaintiff must allege facts showing that the defendants shared a "unity of purpose or a common design" to injure the plaintiff. *Am. Tobacco Co. v. United States,* 328 U.S. 781, 809-10 (1946).

Where a complaint makes only conclusory allegations of a conspiracy under *Bivens* and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint. *See Woodrum v. Woodward County, Okla.,* 866 F.2d 1121, 1126-27 (9th Cir.1989); *Cole v. Gray,* 638 F.2d 804, 811-12 (5th Cir.1981). Reviewing the plaintiff's complaints, the undersigned concludes that the plaintiff fails to allege any facts indicating that the defendants acted jointly to injure him, and conclusory allegations are insufficient to state a claim upon which relief may be granted. *See Adams,* 40 F.3d at 74; *White v. White,* 886 F.2d 721, 724 (1989). Accordingly, this claim should be dismissed.

### C. Breach of Contract

The plaintiff alleges that in April 2007, his case manager, the defendant Koger, made an oral and written agreement to refer the plaintiff for a transfer and that Koger breached this agreement in "violation of PS 3420.09, Standard of Employee Conduct." (Dkt. # 1 - Attach. # 1 - Mem. Supp. Org. Compl. at 9.) To the extent the plaintiff is attempting to state a breach of contract claim, such a claim is not cognizable in a § 1983 or *Bivens* action. *Coastland Corp. v. County of Currituck,* 734 F .2d 175, 178 (4th Cir.1984) (holding contractual rights do not give rise to claims under 42 U.S.C. § 1983). The fact that a federal employee is allegedly a party to a contract does not mean the alleged breaches of contract are converted into a constitutional claim. *See Wilkie v. Robbins,* --- U.S. ----, 127 S.Ct. 2588, 2602, 168 L.Ed.2d 389 (2007). *Bivens* does not create general purpose liability for federal officials. Rather, its scope is more limited. *Bivens* allows only claims based on

tortious conduct against defendants sued in their individual capacity. *Norton v. United States,* 581 F.2d 390, 393 (4th Cir.1978). Accordingly, this claim should be dismissed.

### D. Denial of Access to Court Claims

The plaintiff alleges the defendant Glasgow violated the plaintiff's constitutional rights by confiscating, unlawfully seizing, and destroying court documents and by refusing to allow the plaintiff to call his attorney before the deadline of a brief or make legal copies when the inmates' copy machine is out of order or when the law library is closed. (*Id.* at 2; 6; 7.) The plaintiff is essentially alleging a denial of access to the courts claim.

In *Bounds v. Smith,* 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits. To state a claim for denial of access to the courts, the plaintiff must present allege both a denial of court access and some prejudice resulting from the denial of access. *Strickler v. Waters,* 989 F.2d 1375, 1382-1383 (4th Cir. 1993); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding "courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained."); *Shango v. Jurich*, 965 F.2d 289, 293 (7th Cir. 1992). A plaintiff must demonstrate the defendants caused an actual injury such as the late filing of a court document or the dismissal of an otherwise meritorious claim. *Lewis v. Casey*, 518 U.S. 343, 353-54 (1996).

Here, the plaintiff has failed to show that the loss of his papers (assuming this allegation to be true for purposes of this motion) or his inability to meet with his attorney

prior to a deadline denied him court access, or prejudiced him with respect to any court proceeding as required by the applicable caselaw. The plaintiff does not even identify what court proceeding may have been at issue, much less allege how a court proceeding was effected by the defendants' alleged misconduct. *Pearson v. Saar*, 2004 WL 1391160 (D.Md. 2004)(unpublished)(holding conclusory statement that the plaintiff was unable to properly prepare his cases, is insufficient to state a denial of access claim). The plaintiff's general and conclusory allegations that he suffered harm because of the defendants' conduct are not sufficient to state a claim. *Cochran v. Morris,* 73 F.3d 1310, 1317 (4th Cir.1996); *White v. Boyle,* 538 F.2d 1077, 1079-1080 (4th Cir.1976). Therefore, the plaintiff's denial access claim against the defendants should be dismissed.

## IV. **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' Motion to Dismiss (Dkt. # 45) be GRANTED; and the Plaintiff's claims be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

July 27, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).